## Hutchinson National Bank v. John W. Crow, Defendant in Attachment, Martin Crow, Jr., Interpleader.

1. INSTRUCTIONS—*Where the Case is Close upon the Facts.*—Where a case is close upon the facts the right of the parties can not be preserved unless the jury are accurately instructed.

2. SAME—*Good Faith of Property Transfers.*—In attachment pro-

ceedings, where the theory of the plaintiff is that the defendant was the real owner of the property in question, and that while pretending to act as the agent of another he was acting for himself, said other person having claimed the property by interpleader, an instruction on the part of the interpleader which ignores the good faith of the transaction by which he acquired the property, is erroneous.

3. SAME—*Fraud—Degree of Proof.*—It is error to instruct the jury that the party alleging fraud must prove it by a preponderance of the evidence so clear and cogent that it leaves the mind well satisfied that the charge is true. The law does not require such a degree of proof in a civil suit. It is sufficient if the jury believe a material fact in issue from the evidence, even if the proofs do not generate a belief which entirely satisfies their minds.

4. WITNESSES—*Credibility of—Instruction.*—It is only in cases where it is palpable that a witness has deliberately and intentionally testified falsely as to some material matter and is not corroborated by other evidence, that a jury is warranted in disregarding his testimony.

5. SAME—*Mistake as to Part of His Evidence.*—Although a witness may be mistaken as to some part of his evidence, it does not follow as a matter of law that he has willfully told an untruth or that the jury would have the right to reject his testimony.

6. ATTACHMENT—*Equitable Interests Not Subject To.*—Equitable interests are not subject to attachment. If one conveys his property to another and by some secret agreement retains an interest and use in it, such conveyance and the holding of such secret use is fraudulent as to all persons who may become his creditors; but in a court of equity, and not in a court of law, must be found the relief.

7. FRAUD—*Allegation and Proof.*—Where one seeks to attack a transaction as fraudulent, he must set forth in his pleading the facts constituting the fraud; but where the question of the title of property attacked arises upon an interplea of a claimant, it devolves upon the interpleader to establish his title, and any fact in disproof thereof can be shown under the traverse contained in the general replication.

**Memorandum.**—Attachment. In the Circuit Court of Iroquois County; the Hon. CHARLES R. STARR, Judge, presiding. Trial upon an interpleader; verdict and judgment for the interpleading claimant; appeal by the plaintiff in attachment. Heard in this court at the December term, 1894. Reversed and remanded. Opinion filed January 24, 1895.

BRIEF FOR PLAINTIFF IN ERROR, C. W. RAYMOND, FREE P. MORRIS AND F. L. HOOPER, ATTORNEYS; JAMES McKINSTRY, OF COUNSEL.

The burden of proof is unquestionably upon the interpleader to prove property in himself. If he fails to do this,

or if the evidence shows the property to belong to the defendant in attachment, or to a third person, or if the evidence shows but a qualified right of property in the interpleader, or if it is owned by him jointly with another, he must fail upon the issue tendered by him. Marshall v. Cunningham, 13 Ill. 20; Ripley v. People's Savings Bank, 18 Brad. 430; Hanson v. Dennison, 7 Brad. 73; Com. Nat. Bank v. Canniff, 51 Ill. App. 579; Waples on Attachment, 481; Bostwick v. Blake, 145 Ill. 85.

The right of the plaintiff in error to attack prior fraudulent transfers is unquestionable. 1 Am. & Eng. Ency. of Law, 930.

A conveyance made in fraud of creditors is void as to them, not merely voidable. For all purposes of appropriating the property to the satisfaction of the creditor's demands the property is to be deemed vested in the debtor. Bostwick v. Blake, 145 Ill. 85; McKinney v. Farmers Nat. Bank, 104 Ill. 183.

The rule as to the rights of precedent and subsequent creditors to attack conveyances for fraud is as follows:

1. If the grantor reserves no future use or benefit in the property then the sale can be attacked only by a pre-existing creditor.

2. But where the conveyance is merely colorable and a secret trust and confidence exist for the benefit of the grantor, then the sale is void, both as to precedent and subsequent creditors. Bostwick v. Blake, 145 Ill. 90; Gordon v. Reynolds, 114 Ill. 127; Jones v. King et al., 86 Ill. 225; Guffin v. First Nat. Bank, 74 Ill. 259; Bump on Fraud. Con., 319.

A conveyance, whereby the grantor or vendor is to have the beneficial enjoyment in whole or in part of the property transferred, is fraudulent and void as to creditors. Mitchell v. Sawyer, 115 Ill. 656; Power v. Alston, 93 Ill. 590.

In order to render a conveyance or transfer of property fraudulent or void as against creditors, it is not necessary that the debtor shall in person convey his property, but it

will be sufficient if done through the intervention of a third person, by the consent and procurement of the debtor, with the secret understanding that the property is to be held for the former owner, the debtor. Bostwick v. Blake, 145 Ill. 85.

Where a creditor conveys property to be held wholly or in part in secret trust for his benefit and enjoyment, it matters not that the transaction may be upon a valuable consideration, for it lacks the element of good faith and is fraudulent in law. In such a case the fraud being a continuing one, this conveyance will be void, both as to existing and subsequent creditors. Bostwick v. Blake, 145 Ill. 89; Moore, Admr., v. Wood, 100 Ill. 454; Beidler v. Crane, 135 Ill. 98; Lukin v. Aird, 6 Wall. (U. S.) 78.

For although such a transaction may be upon a valuable consideration, it lacks the element of good faith; for, while it professes to be an absolute conveyance on its face, there is a concealed agreement between the parties to it inconsistent with its terms, securing a benefit to the grantor at the expense of those he owes. A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors. Lukin v. Aird, 6 Wall. (U. S.) 78.

A transfer of property must not only be upon a good consideration, but it must also be *bona fide*. Even though the grantee or assignee pays a valuable, adequate and full consideration, yet if the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another. Biedler v. Crane, 135 Ill. 99.

The foregoing principles apply to conveyances and transfers of personal as well as real estate. Sec. 4, Frauds and Perjuries, R. S., Ch. 59; Moore, Admr., v. Wood, 100 Ill.

454; Gordon v. Reynolds, 114 Ill. 127; Twyne's Case and note, 1 Smith's Leading Cases, 33.

Where it is sought to impeach transactions upon the ground of fraud, the facts constituting such fraud must be properly pleaded. 8 A. & E. Ency. of Law, 653; Jones v. Albee, 70 Ill. 34; Slack v. McLagan, 15 Ill. 249; Ward v. Luneen, 25 Ill. App. 160.

The facts constituting fraud must be clearly set forth. Beatty v. Nickerson, 73 Ill. 605; Call v. Joliet Opera House Co., 79 Ill. 96; Hopkins v. Woodard, 76 Ill. 62; Puterbaugh P. & P. 193.

Brief for the Defendant in Error, Silas Rhodes, Samuel McRoberts, George W. W. Blake and C. H. Payson, Attorneys.

There can be no such thing as fraud in law, with reference to subsequent creditors. To make the transfer void as to them, there must exist at the same time, on the part of the grantor, an actual fraudulent intent and purpose to place his property beyond the reach of existing creditors. Bump on Fraudulent Conveyances, 315–317.

Subsequent creditors have no right to claim an interest in property conveyed prior to the creation of the debt, and can not avoid it. Bridgeport v. Little, 55 Ill. 261; Pratt v. Myers, 56 Ill. 24; Williams v. Davis, 69 Pa. St. 21; Case v. Phelps, 39 N. Y. 164; Hughes v. Manty, 24 Iowa, 499; Wright v. Howell, 35 Iowa, 292; Thatcher v. Pliny, 7 Allen (Mass.) 150; Beal v. Warren, 2 Gray (Mass.) 447; Larimer v. Campbell, 60 Bush. (Ky.) 62.

Proof must be clear and conclusive, and not only of the facts that may constitute a fraud, but a fraudulent intent must be shown. Brown v. Berman H. & Co., 24 Ill. App. 574; Show v. Farwell, 9 Brad. 256.

To render a sale fraudulent both parties must be participants in the fraudulent intent. Schroeder v. Walsh, 120 Ill. 403.

The presumption of the law is that the transaction was fair and free from fraudulent intent, and the fact that it was

between father and son does not change this presumption. One has a right to deal with his own relations, to buy and sell to and from them, and when a consideration is proven, such a transaction is not regarded in the law any different than dealings between strangers. Show v. Farwell, 9 Brad. 256; Bowden v. Bowden, 75 Ill. 111.

The fact that an uninventoried stock of goods was sold on credit to a relative, is not evidence of fraud, nor could fraud be inferred, if defendant had been in debt at time of selling, which was the case in reference to the property. Nelson v. Smith, 28 Ill. 495.

Debtors in failing circumstances may prefer one creditor to another. Schroeder v. Walsh, 120 Ill. 403; Waddams v. Humphrey, 22 Ill. 661; Anderson v. Smith, 5 Black. 295; Bennet v. McGuire, 58 Barb. 625; Frank v. Peters, 9 Ind. 344; Butlers v. Houghwout, 42 Ill. 18.


MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

On the 27th of February, 1892, plaintiff in error sued out of the Circuit Court of Iroquois County, a writ of attachment against John W. Crow claiming that he was indebted to it in the sum of $1,725.64; that he was a non-resident of the State, and had within two years fraudulently conveyed, canceled and disposed of his property so as to hinder and delay his creditors. The writ was levied upon forty-one horses and some farming implements.

At the June term, 1893, Martin Crow, Jr., defendant in error, filed an interpleader claiming to be the owner of the horses. At the November term, 1893, judgment by default was entered against John W. Crow for $1,805.06 and at the March term, 1894, a trial was had upon the interpleader resulting in a verdict and judgment in favor of Martin Crow, Jr. To review the proceedings and trial resulting in the last mentioned judgment this writ of error is prosecuted.

John W. Crow and Martin Crow, Jr., are brothers. Martin Crow, Sr., is their father.

In 1886 and 1887 John W. Crow and his father resided at Hutchinson, Kansas, and were there engaged in speculating

in real estate. John W. was a large operator in city prop-
erty and farm lands, owning at one time real estate valued
at $300,000. He and his father were not general partners
but were jointly interested in certain deals into which he
had induced his father to enter. To raise money to carry
on his operations it became necessary to give mortgages,
and in this way John became involved to the amount of
$200,000.

At a settlement had between them in the latter part of
1887, it is claimed that John was found to be indebted to his
father $10,000, and in payment conveyed to him four lots in
Hutchinson on which stores were situated. The expressed
consideration in the deed was $20,000, and it was executed
November 30, 1887, but was not filed for record until
January 29, 1889. During the interval between the date of
the deed and the time of its being recorded, John became
indebted to the plaintiff in error. He also continued to
control and exercise rights of ownership over the property.

In the spring of 1890, John, assuming to act for his father,
negotiated a trade of this business property with one W. H.
Hubbard for several lots in Clinton, Iowa, on which a large
hotel was located, paying therefor a difference of $2,000 and
assuming the payment of a mortgage upon the hotel prop-
erty for $10,000. The deed to the hotel property was
made to the father on the 16th of April, 1890, and was upon
the expressed consideration of $55,000. John soon took
charge of the hotel under a letting from his father at a ren-
tal of $600 per year, and continued to operate it for nearly
three years. He found the property in a very dilapidated
condition and with poor custom. By putting extensive re-
pairs on the house and giving the business close attention
he so improved the character and custom of the house as to
make it yield a good income, about all of which he expended
in improving the property.

On the 30th of December, 1890, Martin Crow, Sr., executed
to Martin Crow, Jr., a deed to this property at the expressed
consideration of $65,000, subject to the $10,000 mortgage
above spoken of. He also gave him a bill of sale to all the

hotel furniture, two omnibuses, one baggage wagon, five horses and the harness for them. John continued operating the hotel after the title passed to his brother Martin, upon the same terms that he had with his father.

On the 2d of April, 1891, Martin Crow, Jr., executed and delivered to John, a power of attorney to sell, convey or mortgage this property in such way as he should see fit. On the 29th of May, 1892, he gave to his brother, John, another power of attorney, authorizing him, for a period of twenty-five years, without revocation, to buy, sell, mortgage and improve for him any real estate in Clinton, Iowa, or in the State of Iowa, or in any locality within the bounds of the United States. Under the authority of this last power of attorney, John, in January, 1893, exchanged the hotel property for a farm in Iroquois county, Illinois, and the stock of horses brought in question by the interplea.

At the time Martin Crow, Sr., conveyed the hotel property to his son Martin, December 30, 1890, he was himself largely indebted to various parties. It is claimed that he owed his son Martin $4,300 and that the debt was the real consideration for the conveyance. Martin Crow, Jr., is a young unmarried man, without any settled place of abode. For the last ten or twelve years he had wandered about the country, from place to place, working as a farm hand, a laborer in a sugar refinery, a house painter, a cook and a clothes washer. During that period he has lived for short spaces of time at Kansas City, Memphis, New Orleans, Cincinnati, New York City, Clinton, St. Louis, and at six different places in the State of Kansas. He is a notable exception to the old adage, " a rolling stone gathers no moss," because, out of his weekly earnings, he was able in a few years to send his father enough (with interest) to amount to $4,200.

Upon the part of the bank it was contended upon the trial that while the legal title to the four business lots and buildings in Hutchinson was conveyed to Martin Crow, Sr., upon the pretended consideration of $10,000, the property was really owned by John W. Crow; that the trade of this property for the hotel property at Clinton, Iowa, was ma-

nipulated by John W. Crow, for his own use and benefit; that he procured the conveyance of the hotel property from Martin Crow, Sr., to Martin Crow, Jr.; that the consideration for such conveyance was fictitious; that he also manipulated the trade of the hotel property for the section of land in Iroquois county and the property attached; that during all the time that the legal title to the property was in the father and the brother of John W. Crow he was in fact the real owner of the same and that the placing of the legal title in them was to shield the property from John's creditors.

The testimony is quite voluminous and while it would render this opinion too lengthy to enter upon the discussion of it in detail we do not hesitate to say that there is fair room for the contention of plaintiff in error as against the sworn denials of the father and two sons, and the evidence strongly tends to show fraud. The jury should have been carefully instructed and it is easy to understand how error in that regard could mislead them. Where a case is close upon the facts the rights of the parties can not be preserved unless the jury are accurately instructed.

At the instance of the interpleader the court gave the following instruction :

" The court instructs the jury that a party in possession as tenant of property may also legally act as the agent of the owner, and if you believe in this case from the evidence that John W. Crow was the tenant and agent of the interpleader, then in that case the law is that no statement made or act done by such tenant or agent claiming ownership, made or done in reference to the property in which he is such tenant or agent, can bind or affect the title or interest of this interpleader unless he was present and assented to the same or that he thereafter ratified the same."

This instruction would be correct if the good faith of the transaction was not involved. The position of the plaintiff was that John W. Crow was the real owner of the property, and while pretending to act as the agent of another, he was acting for himself. If the interpleader had not acquired the property in good faith, and was but a mere title holder to

enable his brother to hinder and delay creditors, any statement made or act done with reference to the property by the brother, while assuming to act as an agent or tenant, would affect the interest of the interpleader. The instruction is bad for the reason that it ignores the question of good faith.

The fifteenth instruction for the interpleader told the jury that they should find for him, unless they believed from the evidence that the transaction and sale of the property in the case was not *bona fide* and for a valuable consideration. The property involved in this case is the forty-one horses, and there is no question but that the trade with Manske of the hotel property for the horses and land was in good faith.

The eighteenth instruction for the interpleader is as follows :

" The court instructs the jury for the interpleader that when fraud is set up the party alleging fraud must prove it by a preponderance of the evidence, so clear and cogent that it leaves the mind well satisfied that the charge is true. And in this case if you believe from the evidence that the plaintiff in attachment has not so proved the fraud alleged in this case, you should find for the interpleader, if you believe from the evidence the property is his."

The law does not require such a degree of proof in a civil suit. It is sufficient if the jury believe a material fact in issue from the evidence, even if the proofs do not generate a belief which entirely satisfies their minds. Mitchell v. Hindman, 47 Ill. App. 431; Connelly v. Sullivan, 50 Ill. App. 629; Herrick v. Gary, 83 Ill. 85; Stratton v. Central Ry., etc., 95 Ill. 25.

The twenty-eighth instruction is subject to the same objection as the one first above quoted.

The instructions were very numerous, and many of them so involved as to confuse the jury. Less than one-fourth the number given was ample to convey all the legal principles involved.

The instructions offered by the plaintiff relating to a secret trust retained by John W. Crow in the property, were prop-

erly refused by the court.    Equitable interests are not sub-
ject to attachment.    It is true that if one conveys his prop-
erty to some one, and by some secret agreement, retains a
secret interest and use in the property conveyed, such con-
veyance, and the holding of such secret use is fraudulent as
to any and all persons who may become his creditors, but in
a court of equity and not in a court of law must be found
the relief.    We do not see how the questions of a secret trust
and use can arise in this case.    Either John W. Crow or
Martin Crow, Jr., is the true owner of the property attached.
If the latter purchased the Clinton Hotel property in good
faith, without any knowledge of any attempt or design on
the part of his brother or father to defraud creditors, he is
entitled to the property claimed in his interplea.    If he did
not purchase the hotel property in good faith, and was being
used as a mere instrument to effectuate the fraudulent de-
signs of his brother, he is not entitled to it and the attach-
ment should hold it.

We differ from counsel on both sides as to the latitude of
proof permissible under the general replication to the inter-
plea.    The court sustained demurrers to special replications
denying that the interpleader was the true owner of the
property; and setting up the various transactions which con-
stituted the fraud of himself, his father and brother.    In this,
it is claimed by counsel for plaintiff in error, the court erred,
because where it is sought to impeach transactions upon the
ground of fraud, the facts constituting such fraud must be
specially pleaded.    Upon the other hand, it is contended
by counsel for the interpleader in the additional brief filed,
that, as no amended replication setting up the facts consti-
tuting the alleged fraud was filed, all proofs of fraud were
improper, and that plaintiff in error can not now insist that
the verdict is against the evidence.

The authorities are abundant that, where one seeks to
attack a transaction as fraudulent, he must set forth in his
pleading the facts constituting the fraud; yet where the ques-
tion of ownership of property already attached, arises upon
the interplea of one claiming it, it devolves upon the inter-

pleader to establish his title, and any fact in disproof thereof can be shown under the traverse contained in the general replication.

Complaint is made of the refusal of the court to allow certain questions to John W. Crow on his cross-examination, but such latitude was allowed in the cross-examination of the witness, that we do not think the plaintiff in error suffered thereby.

For the errors of the court in instructions to the jury, the judgment must be reversed and the cause remanded.